**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 13-60004-Civ-SCOLA**

JOE HOUSTON,

     Plaintiff,

vs.

7-ELEVEN, INC.,

     Defendant.

_____/

## Order Dismissing Case For Lack Of Jurisdiction

This is a structural-barrier case filed under Title III of the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12181-12189. Joe Houston is seeking an injunction against 7-Eleven to require the convenience store to make certain structural alterations to its facility at 7090 Pines Boulevard, in Broward County, Florida ("7090 Store"), in order to make the facility compliant with the requirements of the ADA. The lawsuit also seeks an injunction requiring 7-Eleven to make all reasonable modifications in its policies, practices, or procedures to ensure that "no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." (Am. Compl. 7-8, ECF No. 37.) 7-Eleven asks the Court to dismiss this case as moot since 7-Eleven has already removed or remedied all of the structural barriers identified by Houston.

### A. The Americans With Disabilities Act

"No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). The ADA contains a number of requirements for places of public accommodation, and a failure to comply with these requirements is often defined as discrimination. The ADA defines discrimination to include "a failure to remove architectural barriers . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). If a place of public accommodation is found to violate this provision, a court may issue an injunction requiring the defendant "to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities." 42 U.S.C. §

12188(a)(2).  A prevailing plaintiff is not entitled to damages, but he may recover reasonable attorneys' fees. 42 U.S.C. §§ 12188(a), 2000a–3(b).

**B. Subject-Matter Jurisdiction And Mootness**

"Article III of the Constitution limits the jurisdiction of the federal courts to the consideration of 'Cases' and 'Controversies.'" *Troiano v. Supervisor of Elections in Palm Beach Cnty., Fla.*, 382 F.3d 1276, 1281 (11th Cir. 2004) (citation omitted).  "The doctrine of mootness derives directly from the case-or-controversy limitation because an action that is moot cannot be characterized as an active case or controversy.  A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.* at 1282 (citation omitted).  "If events that occur subsequent to the filing of a lawsuit . . . deprive the court of the ability to give the plaintiff . . . meaningful relief, then the case is moot and must be dismissed. Indeed, dismissal is required because mootness is jurisdictional.  Any decision on the merits of a moot case or issue would be an impermissible advisory opinion." *Id.* (citation omitted).  When considering a defendant's argument that facts now exist that deprive the court of subject matter jurisdiction, a court may consider extrinsic evidence such as testimony and affidavits.  *See Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003).

The voluntary-cessation doctrine is an exception to the general rule that a case is mooted by the end of the offending behavior.  *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1183 (11th Cir. 2007).  "[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.  If it did, the courts would be compelled to leave the defendant free to return to his old ways." *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)).  "A case *might* become moot if subsequent events made it *absolutely clear* that the allegedly wrongful behavior *could not reasonably be expected to recur*." *Id.* (quoting *Friends of the Earth*, 528 U.S. at 189).  "The formidable, heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Id.* (quoting *Friends of the Earth*, 528 U.S. at 190).

Under the voluntary-cessation doctrine, a court must evaluate a defendant's assertion that the case is moot because the offending behavior has ceased by analyzing three factors: "(1) whether the challenged conduct was isolated or unintentional, as opposed to a continuing and deliberate practice; (2) whether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate suit; and (3) whether, in ceasing the conduct, the defendant has acknowledged liability." *Id.* at 1184.

ADA-architectural-barrier cases are a unique subset of voluntary-cessation-doctrine cases. While these cases are not always a perfect fit within the framework of the three factors discussed in *Sheely*, the nature of structural modifications (as opposed to simply a change in a discriminatory policy) still satisfies the ultimate question that the voluntary-cessation doctrine asks (*i.e.*, is it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur). Several courts have found that where structural modifications have been undertaken to make the facility ADA compliant the case is moot. *See, e.g., Nat'l Alliance for Accessability, Inc. v. Walgreen Co.*, No. 10-Civ-780-J-32-TEM, 2011 WL 5975809, *3 (M.D. Fla. Nov. 28, 2011) (collecting cases). The fundamental rationale supporting these cases is that the alleged discrimination cannot reasonably be expected to recur since structural modifications permanently undo the offending conduct. *Kallen v. J.R. Eight, Inc.*, 775 F. Supp. 2d 1374, 1379 (S.D. Fla. 2011) (King, J.) ("It is untenable for Plaintiff to suggest that once the renovations are completed they could be undone.") (internal punctuation & quotation omitted).

**C. Application Of The Law To The Facts Of This Case**

7-Eleven first learned about Houston's complaints of ADA violations at the 7090 Store when Houston filed this lawsuit. (Falso Decl. ¶ 6, ECF No. 29-3.) Upon receiving the complaint, John Falso, 7-Eleven's Senior Area Facilities Manager, retained an ADA accessibility consultant to review both Houston's assertions and the 7090 Store. (*Id.* ¶ 7.) Although the 7090 Store already had designated disabled parking and other accessibility features, the accessibility consultant identified certain upgrades that could be implemented to bring the facility into full compliance with the ADA. (*See id.*) 7-Eleven hired a general contractor to perform these expensive and complicated accessibility upgrades. (*Id.*) These accessibility upgrades included repaving and restriping the parking lot and enlarging the existing disabled parking space and access isle, remodeling the restroom to make it larger, relocating the sink, installing a new tile floor, and relocating the back storage room at the store. (*Id.*) In total, 7-Eleven spent over $30,000 performing these accessibility upgrades. (*Id.*) At this point in time, all of the architectural barriers identified by Houston at the 7090 Store have been removed or remediated; the 7090 Store is highly accessible. (Gross Decl. ¶ 6, ECF No. 29-1; Expert Witness Summ. 16, ECF No. 29-2.)

7-Eleven has a policy of making its stores accessible and convenient to all customers, including those with disabilities. (Falso Supplemental Decl. ¶ 3, ECF No. 50-2.) In carrying out that policy, all 7-Eleven employees receive extensive training to ensure that 7-Eleven stores are compliant with the ADA and that disabled persons are not discriminated against. (*Id.*) To ensure its

stores are accessible and properly maintained, 7-Eleven pays an outside company to perform inspections of its stores twice a year.  (*Id.* ¶ 4.)

Since 7-Eleven has made structural modifications to remove or remediate all ADA violations at the 7090 Store, this Court is convinced that the allegedly wrongful behavior could not reasonably be expected to recur.  There is zero chance of 7-Eleven spending money to undo the structural modifications it just paid $30,000 to implement.  Additionally, this Court is convinced that 7-Eleven has adequate policies and practices in place to ensure that the 7090 Store remains fully ADA compliant and accessible to all people.

There is ample evidence that the ADA violations at the 7090 Store were both isolated and unintentional.  First, the 7090 Store is about 50 years old. (Falso Decl. ¶ 5, ECF No. 29-3.)  Although there were some shortcomings, the 7090 Store did have designated disabled parking and other accessibility features.  These facts, combined with 7-Eleven's extensive training modules, anti-discrimination policies, and bi-annual inspections are sufficient to assuage this Court that the ADA violations identified by Houston at the 7090 Store were both isolated and unintentional.

7-Eleven's actions appear to be motivated by a genuine desire to conscientiously comply with ADA's architectural requirements, and not merely a desire to avoid liability.  First, upon learning of Houston's complaints, 7-Eleven acted without delay to bring the 7090 Store into full compliance with the ADA.[1]  Within 6 months of 7-Eleven first appearing in this lawsuit, it had completed expensive and complicated accessibility upgrades to the 7090 Store. This process involved hiring an expert to inspect the property, commissioning architectural drawings, applying for work permits, spending over $30,000 on the project, and then paying for a post-completion inspection.  These are the actions of an entity that is highly motivated, and genuinely interested in complying with the full breadth of the ADA.  The fact that 7-Eleven pays an outside company to conduct bi-annual inspections further demonstrates the genuineness of 7-Eleven's commitment to comply with the ADA because this commitment is ongoing, regardless of whether any lawsuit is pending.

There is no dispute that 7-Eleven, in bringing the 7090 Store into full compliance with the ADA, has acknowledged liability.  Houston has conceded this point.  (*See* E-Mail from Philip Michael Cullen, III to Ryan McNamara (May

---

[1]  It appears that 7-Eleven has requested both Houston and his attorney to notify it if they identify a store that is not fully compliant with the ADA. (E-mail from Ryan McNamara to Philip Michael Cullen, III (May 23, 2013, 4:59 PM, ECF No. 34-2.)  Despite this invitation, Houston did not inform 7-Eleven of his complaints before filing this lawsuit.

21, 2013 9:45 AM, ECF No. 34-2) (asserting that 7-Eleven "admits the property does not comply with the law").)

### D. Conclusion

Ordinarily, a case is mooted by the end of the offending behavior. But under some circumstances courts may take a closer look at the sincerity of the offending party's voluntary cessation. Thus the voluntary-cessation doctrine applies in circumstances where an opportunistic defendant, who had been willfully violating the law, remarkably changes its illegal policy or practice simply to avoid liability. This circumstance is particularly concerning when a policy or practice, which is capable of repetition, is in play. For example, in one case a medical clinic had repeatedly refused to allow people with service animals full access to its facilities. *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1178-80 (11th Cir. 2007). In another, a company repeatedly discharged pollutants into a waterway in violation of the Clean Water Act. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 174-77 (2000). In both cases, the Court took a closer look at the defendants' assurances that they would change their ways since it would be so easy for them to slip back into their old (illegal) behavior. The essential question that must be answered under the voluntary-cessation doctrine is simple: Is it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.

In this case, 7-Eleven is not alleged to have engaged in a discriminatory policy or practice against disabled persons.[2] Rather, Houston claims that certain portions of 7-Eleven's 7090 Store were not in compliance with the architectural requirements of the ADA. In response to his complaint, 7-Eleven physically altered the 7090 Store so that it is now fully compliant with the ADA. Unlike the defendant in *Sheely*, 7-Eleven did not wait 9 months into the lawsuit to change its policy. On the contrary, 7-Eleven acted at once upon learning of the problem. And unlike the defendant in *Sheely*, who could potentially revert to its old policy, it is absurd to suggest that 7-Eleven would undo the structural alterations at the 7090 Store, which cost 7-Eleven over $30,000 to accomplish.

---

[2] Houston's amended complaint extensively details the architectural barriers at the 7090 Store that he alleged encountered. (*See* Am. Compl. ¶¶ 5, 9-11, 14, ECF No. 37.) Throughout the entire amended complaint there is only a single, conclusory allegation that 7-Eleven discriminated against Houston through "policies, practices, or procedures." (*Id.* ¶ 12.) Houston's sworn statement clarifies that his complaints against 7-Eleven's 7090 Store relate *only* to the architectural barriers, and do not involve any allegedly discriminatory policies, practices, or procedures. (Houston V.S. ¶ 13, ECF No. 76-1.)

Given the particular facts of this case, it is absolutely clear that 7-Eleven's allegedly wrongful behavior here cannot reasonably be expected to recur.  This case is moot.  Having considered the parties' arguments, the record, and the relevant legal authorities, and for the reasons explained above, it is **ordered** that this case is **dismissed** for lack of subject matter jurisdiction. The Clerk is directed to **close** this case.  All pending motions are **denied as moot**.

**Done and ordered**, in chambers at Miami, Florida, on January 31, 2014.

**Robert N. Scola, Jr.**
**United States District Judge**